IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICARDO NASH,

    Plaintiff,

v.                                                  Civil Action No. 3:16cv592

BRASWELL FOODS,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Braswell Foods' ("Braswell") Motion to Dismiss for "lack of subject matter jurisdiction" pursuant to Federal Rules of Civil Procedure 12(b)(1) and for "failure to state a claim upon which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"). (ECF No. 4.) Braswell provided Plaintiff Ricardo Nash, who proceeds *pro se*, with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (Mot. Dismiss 1 n.1, ECF No. 4.)[1] Nash did not respond, and the time to do so has expired. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not

---

[1] Braswell also properly filed two exhibits with its Motion to Dismiss: (1) a copy of Nash's Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC Charge"); and, (2) a copy of the EEOC's Dismissal and Notice of Rights, commonly called a "Right to Sue" letter. The Court will consider these exhibits in ruling on Braswell's Motion to Dismiss because Nash referred to them in his Complaint, they are integral to his claim, and neither party disputes their authenticity. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) ("[A] court may consider . . . documents central to plaintiff's claim[] and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed.").

aid the decisional process. For the reasons that follow, the Court will grant the Motion to Dismiss.

## I. Factual and Procedural Background

### A. Allegations in Nash's Complaint and in His EEOC Charge[2]

Nash's short Complaint consists of only two paragraphs. (ECF No. 1.) The Court quotes Nash's Complaint in full:

### COMPLAINT

1. Based on information from the EEOC, I'm filing this complaint in Federal Court.

2. August 2015, I was injured on the job and the HR department did an investigation of the injury. In the conference was Wells Caviness Head HR for Braswell, Willie Jervis General Manager and myself Ricardo Nash. During the interview they asked for accounts of how injury occurred, after my explanation Mr. Caviness proceeded to basically call me a liar also stating that there are many people in jail for making false claims. Also asking if I had heard of anyone else getting injured in that manner. With a doctor's note to be out for an extended period I notice there was an ad posting my position in the county's classifieds. After long consider, on August 27, 2015 I chose to resign my position on the grounds of a hostile work environment. Within a couple of hours after receiving my resignation Mr. Caviness called left an apology on my phone.
I'm asking for a year's wages plus bonuses, pain and suffering and mental anguish on the grounds of constructive discharge which lead to a hostile work environment. Even now in the present I'm still dealing with these injuries and fighting with the company's insurance agent.

Nash's EEOC Charge alleged discrimination based on retaliation and disability. Nash articulated the underlying particulars of his EEOC Charge, in full, as follows:

I. I was hired by [Braswell Foods] on or about October 20, 2008, as a Truck Driver. This was my last job classification. After I injured myself on the job, I was taken out of work due to the injury. I was placed under investigation because it was suspected that I filed a false workman's compensation claim. The Human Resources Representative that

---

[2] For ease of reading, the Court retains all original grammar and punctuation in Nash's Complaint and EEOC Charge.

2

> investigated my claim stated that "people are in jail for filing false claims". I felt uncomfortable and quit my job as a result of what I believed to be harassment and retaliation for filing a workers compensation claim.
>
> II. I believe that I was harassed, constructively discharged and retaliated against because I filed a workman's compensation claim in violation of the Americans with Disabilities Act of 1990, as amended.

## B. Procedural History

After Nash filed his Complaint, Braswell filed its Motion to Dismiss. Braswell seeks dismissal because this Court lacks subject matter jurisdiction over the action or, in the alternative, because Nash's Complaint fails to state a claim upon which relief can be granted. (Mot. Dismiss 1–2, ECF No. 4.) Nash never responded to Braswell's Motion to Dismiss.

## II. Legal Standard Applicable to the Entirety of Nash's *Pro Se* Action

In order to approach Nash's allegations in the proper legal fashion, the Court must apply at least three rules of construction. First, the Court must be bound by the allegations in Nash's EEOC Charge. Second, the Court must construe Nash's *pro se* filings liberally. Finally, as part of any motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must apply the familiar precept that it assumes the well-pleaded factual allegations in Nash's Complaint to be true and views them in the light most favorable to Nash.[3] *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court explains the first two rules of construction in more detail below.

---

[3] *See also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A.     **The EEOC Charge Controls the Allegations this Court May Consider**

In evaluating Nash's claims at bar, the Court is bound by the scope of the allegations in Nash's EEOC Charge. *See, e.g., Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) ("In any subsequent lawsuit alleging unlawful employment practices under Title VII [or the ADA], a federal court may only consider those allegations included in the EEOC charge."). If a plaintiff's Title VII or ADA claims "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Id.* (internal citations and quotation marks omitted). Given that a plaintiff must exhaust administrative remedies, staying within the scope of the EEOC charge assures that a federal court has jurisdiction over a claim. *Id.*

The Court therefore may only consider the allegations Nash made in his EEOC Charge to determine the viability of his discrimination claim. In the EEOC Charge, Nash alleges that he "felt uncomfortable and quit [his] job as a result of what [he] believed to be harassment and retaliation for *filing a workers['] compensation claim*." (EEOC Charge, ECF No. 5-1 (emphasis added).)

B.     **The Court Must Construe Nash's *Pro Se* Filings Liberally**

Federal district courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). That said, a *pro se* plaintiff must nevertheless allege sufficient facts to state a cause of action. *Id.* (citing *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md. 1996)). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims" that the litigant failed to raise on the face of the complaint. *Newkirk v. Circuit Court of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

### C.     Summary of Allegations the Court Will Evaluate

Because Nash references an on-the-job injury, the "company's insurance agent," "claims," and states that he filed his Complaint "[b]ased on information from the EEOC," (Compl. ¶¶ 1–2), the Court, construing Nash's claims liberally, will evaluate his Complaint for claims based on the Virginia Workers' Compensation Act, Va. Code. §§ 65.2, *et seq.* (the "VWCA"). Because Nash also invokes the phrases "hostile work environment" and "constructive discharge," the Court will evaluate Nash's Complaint liberally for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (the "ADA").

## III.  Analysis: Nash's Claim Under the Virginia Workers' Compensation Act

Nash essentially provides no legal bases for his claim. To the extent that Nash alleges that Braswell constructively discharged him for filing a claim under the VWCA, he fails to establish that this Court has subject-matter jurisdiction over his claims.

### A.     Legal Standard: Subject Matter Jurisdiction

Federal district courts are courts of limited subject-matter jurisdiction. *United States ex rel. Vuyvuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). "Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties." *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (internal citations omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without

exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing Fed. R. Civ. P. 12(b)(1)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) can attack subject-matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject-matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6)[4] consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

A Rule 12(b)(1) motion may also challenge the existence of subject-matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see*

---

[4] The Court articulates the appropriate standard of review under Federal Rule of Civil Procedure 12(b)(6) on pages eight through nine.

*also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction intertwine with the facts central to the merits of the dispute, a court should find that jurisdiction exists and resolve any factual dispute on the merits because the jurisdictional attack would then closely mirror a challenge of the merits. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d at 1219. A court need not examine jurisdiction in that manner when a plaintiff asserts the claim solely for the purpose of obtaining jurisdiction, or when a plaintiff raises a wholly insubstantial and frivolous claim. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

**B.      Nash Fails to Establish that this Court has Subject-Matter Jurisdiction Over His Claim for Retaliatory Discharge Under Virginia Code § 65.2-308**

Virginia Law, not federal law, governs the VWCA and violations thereof. *See* Va. Code §§ 65.2 *et seq.* And Virginia law, not federal law, creates a cause of action for retaliatory discharge of an employee who filed a workers' compensation claim. Va. Code § 65.2-308 ("No employer or person shall discharge an employee solely because the employee intends to file or has filed a claim under this title or has testified or is about to testify in any proceeding under this title."). A federal court has jurisdiction over cases that arise under state law when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and [the claim is] between citizens of different States." 28 U.S.C. § 1332(a)(1). Thus, when the parties are

diverse and the amount in controversy exceeds $75,000, a federal court could exercise jurisdiction over a claim for retaliatory discharge under Virginia Code § 65.2-308. *See, e.g., Dudley v. EXP, Inc.*, No. 7:14cv00459, 2014 WL 5810485, at *2 (E.D. Va. Nov. 7, 2014) (dismissing a claim alleging retaliatory discharge under Va. Code § 65.2-308 for lack of subject matter jurisdiction because no federal question was presented and the parties were not completely diverse).

Nash's Complaint fails to allege the citizenship of the parties or the amount in controversy, and neither is clear from the face of the Complaint. Nash claims no specified amount of damages when seeking "a year's wages plus bonuses, pain and suffering and mental anguish." (Compl. ¶ 2.) Nash also articulates neither his own citizenship nor Braswell's citizenship, and the Court cannot discern either party's citizenship from the face of the Complaint. Nash lists his Virginia, and Braswell's North Carolina, mailing address on his Complaint, but Nash does not identify the state in which Braswell is incorporated or the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). As such, the Court cannot find that it has subject-matter jurisdiction over Nash's claim for retaliatory discharge under Virginia Code § 65.2-308.

### IV. Analysis: Claims Under Title VII or the ADA

To the extent that Nash attempts to bring a claim under either Title VII or the ADA, those attempts fail because, even taken as true, viewed in the light most favorable to Nash, and construed liberally, Nash does not plead facts that state a claim for relief under either Title VII or the ADA.

8

### A. Standard of Review: Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Martin*, 980 F.2d at 952 (citing 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Matkari*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the

plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

### B. Nash Fails to State a Claim for Constructive Discharge

#### 1. Nash Does Not Present a Cognizable Claim Under Title VII

Title VII makes it "an unlawful employment practice" for any employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It also prohibits an employer from retaliating against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). When a plaintiff alleges that his or her discharge was constructive rather than overt, the plaintiff must prove that the employer deliberately made the employee's working conditions "intolerable in an effort to induce [the employee] to quit." *Taylor v. Va. Union Univ.*, 193 F.3d 219, 237 (4th Cir. 1999) (internal citations and quotation marks omitted). "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the plaintiff to quit." *Id.* The objective "reasonable person" standard governs the determination of whether a plaintiff's working conditions were intolerable. *Id.*

Nash fails to state a claim for constructive discharge under Title VII for at least three reasons. First, he pleads no facts indicating that Braswell took any actions with the intent to force Nash to quit. Indeed, Nash alleges no facts that even imply Braswell *wanted* him to resign. Nash merely states that he "chose to resign [his] position on the grounds of a hostile work environment." (Compl. ¶ 2.) Second, Nash pleads no facts that would lead a reasonable person to find his working conditions intolerable. He alleges that, in a meeting with "Wells Caviness[,]

10

Head HR [and] Willie Jervis[,] General Manager[,] . . . Mr. Caviness proceeded to basically call [Nash] a liar also stating that there are many people in jail for making false claims." (*Id.*) This Court cannot find that a single instance of having one's credibility challenged, even given a concomitant statement about people going to jail for making false claims, constitutes intolerable working conditions under the law, especially when viewed from the perspective of a reasonable person. *See Taylor*, 193 F.3d at 237–38.

Finally, even if Nash sufficiently pled facts to establish the elements of constructive discharge, he would still have to allege that the constructive discharge occurred either because of his protected *status* under Title VII ("race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1)) or because he engaged in a protected *activity* under Title VII ("oppos[ing] any practice made an unlawful employment practice by [Title VII], or . . . ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]," 42 U.S.C. § 2000e-3(a)). Nash's Complaint contains no assertion that his discharge stemmed from improper consideration of a protected status such as race or religion. As to activity, Nash alleges only constructive discharge for filing a claim under the VWCA. (Compl. ¶ 2.) Because filing a workers' compensation claim does not qualify as a protected activity under Title VII, Nash cannot state a claim for a violation of Title VII.

### 2. Nash Does Not Present a Cognizable Claim Under the ADA

Nash similarly cannot state a claim for constructive discharge under the ADA. The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). A "disability" includes any physical or mental impairment that "substantially limits one or more major life activities" of an individual. 42 U.S.C. § 12102(1)(A). Like Title VII, the ADA also prohibits an employer from

11

retaliating against an employee for "oppos[ing] any act or practice made unlawful by [the ADA], or because [the employee] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).

Nash fails to state a claim for discrimination on the basis of a disability in violation of the ADA. First, Nash does not allege that he is a "qualified individual with a disability." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). Although Nash talks about an on-the-job injury, he does not articulate any specifics as to what would make him a qualified individual with a disability. Further, Nash's allegation that he had a "doctor's note to be out for an extended period," (Compl. ¶ 2), could defeat any claim that he constitutes a "qualified individual." That allegation might establish that, at least during his extended absence, he could not "perform the essential functions of the employment position" he held.[5] *See* 42 U.S.C. § 12111(8). Nash's contention that Braswell discriminated against him in violation of the ADA fails, ultimately, because he cannot establish that any adverse action Braswell allegedly took against him was *on the basis of* his claimed disability. *See* 42 U.S.C. § 12112(a). Rather, Nash asserts that Braswell constructively discharged him because he filed a claim under the VWCA, not because he was injured or because he missed work because of an injury.

Moreover, even if Nash had sufficiently alleged that he had a physical or mental impairment that "substantially limit[ed] one or more major life activities" amounting to a disability under the ADA, *see* 42 U.S.C. § 12102(1)(A), he fails to assert that Braswell

---

[5] The Court declines to rule on whether Nash's allegation of an injury requiring him to miss work for an "extended period" in fact qualifies as a physical or mental impairment that "substantially limit[ed] one or more major life activities" amounting to a disability under the ADA. *See* 42 U.S.C. § 12102(1)(A).

12

constructively discharged him *because of* his alleged impairment. The plain language of the ADA requires a plaintiff to establish that the adverse employment action was taken against him or her was "*because of* the [plaintiff's] disability." 42 U.S.C. § 12112(b)(1). Even construed most liberally, Nash's Complaint contends that he was discriminated against because he filed a claim under the VWCA, not because of any alleged disability.

Finally, Nash also fails to plead facts that state a claim under the anti-retaliation provision of the ADA because any assertion of constructive discharge stems from his pursuit of recourse under the VWCA. (Compl. ¶ 2.) Because filing a workers' compensation claim does not qualify as a protected activity under *the ADA*, Nash cannot state a claim for a violation of *the ADA*. Nash cannot state a claim for a violation of the ADA because he does not allege facts that, even construed most liberally, establish that he is a qualified individual with a disability, that Braswell discriminated against him on the basis of any disability, or that Braswell discriminated against him because of any protected activity under the ADA. At bottom, Nash simply alleges that Braswell constructively discharged him for filing a claim under the VWCA. A VWCA filing satisfies neither the "qualified individual with a disability" nor the "protected activity" prerequisites of the ADA.

### C. Nash Fails to State a Claim for a Hostile Work Environment

Nash fails to state a claim for a hostile work environment because he alleges no facts indicating harassment severe or pervasive enough to alter a term, condition, or privilege of his employment.

A cause of action for hostile work environment exists under both Title VII and the ADA. *Fox v. General Motors Corp.*, 247 F.3d 169, 175–76 (4th Cir. 2001) (citing cases). To state a

claim for a hostile work environment under Title VII, a plaintiff must allege facts sufficient to state each of the following elements:

> (1) the subject conduct was unwelcome; (2) it was based on [some protected characteristic of the] plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and[,] (4) it was imputable on some factual basis to the employer.

*Brown v. Perry*, 184 F.3d 388, 393 (4th Cir. 1999). To state a claim for a hostile work environment under the ADA,[6] a plaintiff must allege facts sufficient to state each of the following elements:

> (1) he [or she] is a qualified individual with a disability; (2) he [or she] was subjected to unwelcome harassment; (3) the harassment was based on his [or her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and[,] (5) some factual basis exists to impute liability for the harassment to the employer.

*Fox*, 247 F.3d at 177 (citing *Brown v. Perry*, 184 F.3d 388, 393 (4th Cir. 1999)).

The examination of severity and pervasiveness involves both subjective and objective analysis. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). First, the plaintiff must personally perceive the environment to be "hostile or abusive." *Jones*, 16 F. Supp. 3d at 630. Second, the plaintiff must show that his or her perception was "reasonable." *Id.*; *Brandford v. Shannon-Baum Signs*, No. RDB-11-836, 2012 WL 3542604, at *6 (D. Md. Aug. 15, 2012) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)), *aff'd*, 519 F. App'x 817 (4th Cir. 2013). To determine the reasonableness of the plaintiff's perception, courts look to a series of nonexclusive factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and[,] whether it unreasonably interferes with an employee's work performance."

---

[6] The ADA's cause of action for hostile work environment is "modeled after the Title VII [of the Civil Rights Act of 1964] cause of action." *Fox*, 247 F.3d at 176 (citations omitted).

*Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). No single factor is dispositive, and plaintiffs must meet a high standard to satisfy the severe or pervasive element of a hostile work environment claim. *Sunbelt Rentals*, 521 F.3d at 315.

Whether "harassment is sufficiently severe or pervasive enough is quintessentially a question of fact," *Shiflett*, 1998 WL 386116, at *4, so a plaintiff must "allege facts to support a claim for relief," *Bass*, 324 F.3d at 765 (affirming district court's dismissal of a hostile work environment claim when plaintiff failed to allege that the problems she had with her coworkers and supervisors rose to the severe or pervasive level actionable under Title VII and the ADA).[7]

Nash clearly does not plead facts sufficient to allege a workplace characterized by severe or pervasive harassment based on any protected status. Any harassment he alleges is based on filing a claim under the VWCA, not on his membership in a protected class under Title VII or his status as a qualified individual with a disability under the ADA. He does not allege harassment that he subjectively experienced as "hostile or abusive," nor does he plead facts suggesting harassment that was objectively frequent or severe. Nash describes one interview in which the "Head HR for Braswell," during an investigation of Nash's workplace injury, "basically call[ed] him] a liar." (Compl. ¶ 2.) This Court cannot find that a single instance of having one's credibility challenged, even given a concomitant statement about people going to jail for making false claims, constitutes objectively severe or frequent harassment under the law. *See Jones*, 16

---

[7] Even recognizing that the severity or pervasiveness of harassment can be a question of fact, district courts within the Fourth Circuit regularly grant motions to dismiss claims for hostile work environment when appropriate. *See, e.g., Jones*, 16 F. Supp. 3d at 631 (granting a motion to dismiss claim for hostile work environment when the complaint did not "indicate a pattern of 'extremely abusive language' or otherwise pervasive conduct based on the plaintiff's [protected status.]" (citing *Miller v. Wash. Workplace, Inc.*, 298 F. Supp. 2d 364, 375 (E.D. Va. 2004)); *see also Rivera v. Prince William Cty. Sch. Bd.*, 1:09cv341, 2009 WL 2232746, at *1 (E.D. Va. July 22, 2009) (granting a motion to dismiss plaintiff's claim for hostile work environment because "[p]laintiff's complaints about her co-worker's boorish sporadic behavior spanning a seventeen-month period is insufficient to state a claim under Title VII.")).

F. Supp. 3d at 630. As such Nash's Complaint fails to state a claim for hostile work environment under either Title VII or the ADA.

## V. Conclusion

Even construing his claims most liberally, Nash's threadbare allegations fail to establish jurisdiction or to state a claim upon which relief can be granted. Indeed, Nash's conclusory contentions do not even amount to a formulaic recitation of the elements of a VCWA, Title VII, or ADA claim because he does not allege diversity, he does not invoke a protected status or qualified disability on which Braswell improperly acted, and he does not assert a cognizable protected activity for which Braswell unlawfully retaliated against him. For the foregoing reasons, the Court will grant Braswell Food's Motion to Dismiss. (ECF No. 4.) The Court will dismiss Nash's Complaint. An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 2/28/2017
Richmond, Virginia